The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BLAINE WILMOTTE and MADISON WILMOTTE,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>Defendant. | NO.  2:18-cv-00086-BHS<br><br>PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE REMITTITUR<br><br>NOTE ON MOTION CALENDAR: NOVEMBER 1, 2019 |
| DALE SKYLLINGSTAD, individually,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>Defendant. | |

## I.    Introduction.

The jury awarded these plaintiffs only those damages for their permanent and disabling injuries that the jury found were proximately caused by Amtrak's admitted negligence.  Amtrak's invitation to this Court to revisit discretionary rulings, many of

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

which Amtrak agreed to or to which it failed to timely object, does not provide a basis for a new trial; those decisions fell well within this Court's broad trial management discretion. Amtrak also has failed to identify any misconduct, let alone misconduct that it objected to at the time of trial, that would justify a new trial. Amtrak's contention that the verdict was the result of passion or prejudice relies on a comparison with other jury verdicts that is contrary to settled law and to the jury's paramount duty under Washington law to assess damages, and ignores the substantial evidence supporting this jury's verdict. This Court should deny Amtrak's motion for new trials or remittitur.

## II.    Argument.

### A.    This Court may grant a new trial only if the jury's verdict is against the clear weight of the evidence and this Court has the definite and firm conviction that a mistake has been made.

This Court may set aside the jury's verdict and grant a new trial under Rule 59 only "if the verdict is against the clear weight of the evidence." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). "'[A] decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter.'" *Landes*, 833 F.2d at 1371 (quoting C. Wright & A. Miller, Federal Practice and Procedure § 2806, at 48-49 (1973). The Court may grant a new trial only "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1088 (9th Cir. 2009) (internal quotation marks omitted) (reversing district court's grant of new trial). "[A] district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 819 (9th Cir. 2001) (reversing district court's grant of new trial).

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

1
2
3
4
5
6
7
8
9
10

In addition, many of Amtrak's post-trial complaints did not elicit a contemporaneous objection at trial. A party that seeks a new trial based on conduct or decisions to which it did not object at trial must meet the far more demanding standard of "plain error." *Smith v. City & Cty. of Honolulu*, 887 F.3d 944, 953 (9th Cir. 2018). "Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir.2002) *cert. denied*, 537 U.S. 1110 (2003) (quoted source omitted). It requires: "(1) an error; (2) that the error be plain or obvious; (3) that the error have been prejudicial or affect substantial rights; and (4) that review be necessary to prevent a miscarriage of justice." *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 517 (9th Cir. 2004) (reversing new trial) *cert. denied*, 543 U.S. 979 (2004).

11
12
13
14

Amtrak received a full and fair trial, and falls woefully short of meeting these standards for new trial. Amtrak's scattershot arguments – many of which are raised for the first time in this motion – are nothing more than an improper invitation for this Court to usurp the inviolable role of the jury to determine damages.

15
16

> **B.    Amtrak is not entitled to a new trial based on this Court's trial management decisions, many of which Amtrak invited or did not object to, and which were well within this Court's discretion when they were made.**

17
18
19
20
21
22
23

This Court has broad discretion in managing the conduct of trial, including the admission of evidence and the argument of counsel. Such discretionary decisions are not grounds for a new trial if the court's original decision was a proper exercise of its broad discretion. *See Tri Cty. Indus., Inc. v. D.C.*, 200 F.3d 836, 842, *as amended*, 208 F.3d 1066 (D.C. Cir. 2000) (reversing grant of new trial based on discretionary exclusion of evidence; "we conclude that the district court, in granting a new trial based on a revised view of its original rulings, did abuse its discretion."). Further, a party may not claim

24

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 3
NO.  2:18-cv-00086-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

"error" in rulings that it either invited or to which it failed to object.  *Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 (9th Cir. 2010).

### 1. Neither the stipulated consolidation nor order of presentation of evidence in the agreed consolidated trial are grounds for a new trial.

Having *stipulated* to consolidation (Hoyal Dec., Ex. A), Amtrak cannot now claim that consolidation constituted prejudicial error.  *See Rorabaugh v. Cont'l Cas. Co.*, 321 F. App'x 708, 709 (9th Cir. 2009) ("Defendants waived their right to appeal . . . by filing a stipulation").  Moreover, Amtrak never asked this Court to take any of the "measures" it now complains should have been taken to "control" the presentation of evidence in the agreed consolidated trial – a matter that in any event "is normally left to counsel to decide."  Wright & Miller, 28 Fed. Prac. & Proc. Evid. § 6164 (2d ed.) Amtrak expressed "growing concerns at the pretrial conference" about requiring each plaintiff to present their entire case before moving to the next plaintiff (Dkt. #142 at 4),[1] but it never asked this Court to order plaintiffs to present their case in this, or any, particular manner.

Amtrak "stipulated to consolidated trial" (Dkt. # 143-1 at 3), and concedes (Dkt. #142 at 5) this Court has "'broad' discretion to consolidate actions."  *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008) (quoted source omitted), *cert. denied*, 555 U.S. 1031 (2008).  This Court also has broad discretion "over the mode and order of examining witnesses and presenting evidence," FRE 611(a), and "the control of closing arguments."  *People of Territory of Guam v. Ignacio*, 852 F.2d 459, 462 (9th Cir. 1988); *see also* Wright & Miller, § 6164.  *None* of the cases cited by Amtrak (Dkt. # 142 at 5-6) hold that a trial court abused its discretion. Amtrak falls far short of showing that this Court abused its discretion.

---

[1] Except as noted, all docket citations are to the Wilmotte docket, case number 2:18-cv-00086-BHS.

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 4
NO.  2:18-cv-00086-BHS

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Amtrak did not object when the Court expressed a preference to "consolidate[] or reduce[]" expert testimony on damages (Hoyal Dec., Ex. C-2; 8/20 TT 17), and never objected to the witness lists that plaintiffs sent each night informing Amtrak who would testify the next day, and making clear that plaintiffs did not intend to follow Amtrak's preferred "logic" to "present the entire testimony of a plaintiff, followed in sequence by that plaintiff's supporting medical testimony."  (Dkt. # 142 at 5) (Hoyal Dec., Ex. B)  If Amtrak wanted this Court to "us[e] cautionary instructions," or "control[] the manner in which [the parties' claims and defenses] are submitted" (Dkt. # 142 at 5 (alterations in original and added)), it was incumbent on it to ask this Court for that relief.  Amtrak's allegation that plaintiffs' witness order was a nefarious scheme to "confuse" the jury and furtively "exact a punitive amount from Amtrak" also ignores that the trial schedule was upended by the mid-trial grant of a mistrial as to plaintiff Harris.  Counsel had to scramble; the order of witnesses was dictated by availability and the need to ensure a witness was always available to testify.  (Hoyal Dec., Ex. C-24; 9/6 TT 8 ("Frankly, I was trying to get some witnesses scheduled."))

15
16
17
18
19

Finally, as this Court recognized, it was entirely reasonable to allow plaintiffs to conduct a joint closing argument, because it avoided "a lot of up and down" resulting from separate closings.  (Dkt. # 143-1 at 17)  And while Amtrak initially objected to the Court's "preliminary decision" to allow a joint closing, it did not renew its objection after the Court stated it would "think about it overnight."  (*See* Dkt. # 143-1 at 17-18, Hoyal Dec., Ex. C-41-42; 9/11 TT 228-29)

20
21
22
23
24

Amtrak has not and cannot show any prejudice from this Court granting the parties' stipulation to consolidation, or failing to address objections Amtrak never made.  Amtrak's only assertion of prejudice is speculation that the jury was unable to "distinguish the specifics of one plaintiff's damage case from another's," encouraging it to "treat Blaine Wilmotte and Dale Skyllingstad as basically entitled to the same noneconomic damages."

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

(Dkt. # 142 at 5-6)  But while Amtrak now insists plaintiffs had "very distinct damage claims" (Dkt. # 142 at 6), during trial it acknowledged "a lot of the injuries are very similar, as we have heard." (Dkt. # 143-1 at 18)  More importantly, Amtrak ignores that the jury awarded *different* amounts – both economic and noneconomic – to Mr. Wilmotte and Mr. Skyllingstad.  Where, as here, a jury returns different verdicts on different claims, that is "[t]he best evidence of the jury's ability to compartmentalize the evidence." *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987) (citation omitted) (rejecting argument that defendants were prejudiced by denial of pretrial motions for severance), *cert. denied*, 488 U.S. 974 (1988).

### 2. The Court's other trial management decisions do not justify a new trial either.

The Court has broad discretion to manage the trial and the admission of evidence. *Navellier v. Sletten,* 262 F.3d 923, 941-42 (9th Cir. 2001), *cert. denied sub nom., McLachlan v. Simon,* 536 U.S. 941 (2002).  An evidentiary ruling or trial management decision that itself was not an abuse of discretion is not a proper basis for new trial even if this Court would now rule differently, and an erroneous evidentiary ruling must substantially prejudice a party to justify a new trial.  *Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir. 1995), *cert. denied*, 517 U.S. 1216 (1996).  The Court's other trial management decisions do not justify a new trial either.

### a. The Court properly denied Amtrak's motion in limine and admitted the testimony of Toby Hayes.

The Court addressed Dr. Hayes' testimony before trial when ruling on motions in limine.  After the Court expressed concern that his testimony regarding Mr. Harris and Mr. Skyllingstad would be speculative (Hoyal Dec., Ex. C-3-4; 8/20 TT 21-22), plaintiffs limited his testimony to the Wilmotte case.  This Court ruled that Dr. Hayes could testify regarding the specific forces experienced by Mr. Wilmotte when the railcar careened off

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 6
NO.  2:18-cv-00086-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

the tracks onto I-5, shattering his leg and trapping him in his crushed vehicle, because "[a]nything that will tell the jury about the severity of the impact that can relate to the emotional damages is relevant and not unfairly prejudicial." (Dkt. # 143-1 at 61)

That ruling was well within the Court's discretion, and Amtrak's arguments to the contrary are little more than an untimely motion for reconsideration of this Court's in limine ruling. As many other courts have recognized, Dr. Hayes is qualified to testify in cases involving injuries sustained in vehicular accidents because he has "specific knowledge and experience (including his completion of medical school courses and professorships at Harvard Medical School and Oregon State University) regarding the mechanisms and treatment of musculoskeletal injuries." *Ream v. United States*, No. 2:17-CV-1141-RAJ, 2019 WL 2578600, at *2 (W.D. Wash. June 24, 2019); *see also* Dkt. # 93 at 3 n.1 (listing cases admitting Hayes' testimony); *Lind v. United States*, 768 F. App'x 663, 665 (9th Cir. 2019) (district court did not err in admitting biomechanical engineer's testimony because he was "qualified to provide general-causation testimony regarding the forces generated in a given collision and the types of injuries one would expect those forces to cause"). The amount of force Mr. Wilmotte experienced was plainly relevant to the nature and extent of his injuries and the pain and emotional distress he suffered: his truck "exploded" and he was covered in dirt, glass, and blood; his feet were pinned under the front dash by Amtrak's railcar. (Hoyal Dec., Ex. C-36; 9/11 TT 158) Amtrak has failed to provide any reason for this Court to change its mind regarding the admissibility of Dr. Hayes' testimony to explain the forces unleashed by the derailment, let alone explain why it should justify a new trial.

   b. **The Court did not abuse its discretion in rejecting Amtrak's proposed verdict form.**

Whether to use a party's proposed verdict form also is a decision vested in the Court's broad discretion. *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470,

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

1475 (9th Cir. 1995) (a trial court has "complete discretion as to whether a special or general verdict is to be returned") (quoted source omitted).  Amtrak cites no authority supporting its assertion that the Court was *required* to use a verdict form segregating past and future economic damages.  *Hadley v. Maxwell*, 98 Wn. App. 1053, 2000 WL 6072 (2000), *rev'd in part*, 144 Wn.2d 306, 27 P.3d 600 (2001), the unpublished, nonprecedential decision it cites (*see* Washington GR 14.1), *rejected* the argument that use of a general verdict form was improper.  Nor does *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prod. Co.*, 370 U.S. 19, 82 S. Ct. 1130, 8 L. Ed. 2d 305, *reh'g denied*, 370 U.S. 965 (1962) support Amtrak's claim that it "was entitled to an itemized verdict" (Dkt. # 142 at 19); in *Sunkist* one of the plaintiff's theories of *liability* was erroneous, and thus it was not possible to tell if the general verdict was based on the erroneous theory.  Amtrak's claimed "right" to an "itemized verdict" is without merit.

c. **The Court did not abuse its discretion in allowing plaintiffs to use a chart in discussing damages.**

Trial courts also have wide discretion regarding the use of demonstrative evidence.  *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773 n.9 (9th Cir. 1981).  Amtrak's allegation that this Court abused that discretion in allowing plaintiffs to use a damages chart during closing argument is meritless.  Far from being "deeply misleading," the chart was a reasonable method of breaking down the elements of recoverable damages.  Amtrak recognized as much before trial, agreeing with plaintiffs' proposed instruction, ultimately not given by the Court, that "charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case." (Dkt. # 76 at 5)  This Court correctly ruled at trial that plaintiffs' chart was well within the bounds of permissible argument.  (Hoyal Dec., Ex. C-63; 9/12 TT 100 ("I don't think it is overly confusing or misleading at all.  It is

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

all part of argument.")) As that ruling was entirely correct, it was certainly not an abuse of discretion warranting a new trial.

Instruction 5 told the jury that "[a]rguments and statements by lawyers are not evidence." (Dkt. # 119 at 5) Plaintiffs' chart was simply a visual aid supporting elements of damages recoverable under damages instructions to which Amtrak did not object. (*See* Dkt. # 143-1 at 31) Amtrak's contentions regarding the chart boil down to the argument it made to the jury – that plaintiffs argued for unreasonably high damage numbers to serve as an "anchor" for the jury's consideration of damages. (Hoyal Dec., Ex. C-59-60; 9/12 TT 66-67 ("That's called anchoring. Throw a big number out and see what happens.")) And, as Amtrak told the jury, there was nothing unusual about plaintiffs' tactic: rather, "[t]hat is one of the oldest plaintiff's trick in the world," which Amtrak was thoroughly able to address during its closing argument. (Hoyal Dec., Ex. C-59-60; 9/12 TT 66-67) Amtrak in fact provided its own "anchors," confirming that there is nothing improper about a party advocating for a favorable measure of damages. (Hoyal Dec., Ex. C-61; 9/12 TT 78) Ultimately, the jury awarded plaintiffs *less than half* of their requested damages, confirming that it was not improperly influenced by the chart, or by this Court's decision to allow plaintiffs to use the instruction in discussing damages. *Union Oil Co. of California v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003) (reversing grant of new trial where "the jury returned a verdict of approximately $800,000 less than [plaintiff] requested."), *cert. denied*, 540 U.S. 1107 (2004); *Hemmings*, 285 F.3d at 1192 (rejecting argument that verdict was excessive after observing "the jury's award was *below* the amount calculated by [plaintiff's CPA]") (emphasis in original).

*Lawrence v. Trugreen Landcare, LLC*, 172 Wn. App. 1036, 2013 WL 68579, *rev. denied*, 177 Wn.2d 1013 (2013), another nonprecedential, unpublished case that Amtrak cites, does not support Amtrak's argument that it was error to urge the jury to separately consider the nature and extent of plaintiffs' injuries in calculating their damages. As this

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

Court recognized, "the nature and extent of the injuries" "is the very first item in the Ninth Circuit" pattern instruction on damages.  (Dkt. # 143-1 at 21)  *See* Ninth Circuit Model Civil Jury Instruction 5.2.  It is also a standard element of Washington's pattern instructions.  *See* Washington Pattern Civil Jury Instruction 30.01.01, 30.04.  In any event, *Lawrence* addressed a challenge to a verdict form that – unlike the one here – "provided a separate award for the nature, extent, and duration of injury," and distinguished such a verdict form from instructions, such as those here, "telling a jury to consider the nature, extent, and duration of the plaintiff's injuries in reaching a verdict." 2013 WL 68579, at *3.

> **d.   This Court did not abuse its discretion in allowing reference to known, relevant facts.**

Amtrak mischaracterizes as "misconduct" instances in which this Court, exercising its discretion in trial management, approved passing references to known, relevant facts in argument or evidence.  None of these instances would justify a new trial:

> **i.   This Court properly recognized that the jury knew that the derailment caused fatalities.**

Given the widespread publicity of the derailment, this Court recognized that the jurors knew *before* stepping foot in the courtroom that the derailment caused fatalities. (Dkt. # 143-1 at 81-82("it is no mystery to them that there is a large number of people that were injured and probably many of them know that there were fatalities."); *see also* Hoyal Dec., Ex. C-9; 9/3 TT at 26 (Court's statement during voir dire that "nearly everyone in the room" raised their hand when asked if they had "heard or read anything about this case before?"))  Amtrak never sought to remove any potential jurors based on knowledge of this tragedy.  (Dkt. # 143 at 78-79)  Counsel's two later references to the fact that the derailment caused fatalities was neither misconduct nor did it "so permeate[] the trial that the jury was necessarily prejudiced."  *Kehr v. Smith Barney, Harris Upham & Co.*,

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 10
NO.  2:18-cv-00086-BHS

736 F.2d 1283, 1286 (9th Cir. 1984). In any event, such isolated statements could not justify a new trial given all the evidence of the plaintiffs' severe and permanent injuries. *See Davis v. King Cty.*, No. C02-2440RSM, 2006 WL 223818, at *2 (W.D. Wash. Jan. 27, 2006) (isolated statements to the jury regarding dismissal of some of plaintiffs' claims, although improper, did not warrant new trial because "the jury was already aware that some claims had been dismissed").

ii.     **The speed of the train and Amtrak's admission of liability were obvious and necessary context for plaintiffs' claims.**

Likewise, counsel's statements regarding the speed of the train and Amtrak's admission of liability were not improper, as this Court recognized at the time. (*See* Dkt. # 142 at 8-9) The speed of the train was important context for "how the injuries were sustained" and the distress each plaintiff felt as a result of the derailment, as several witnesses testified without objection. (Hoyal Dec., Ex. C-8, 10, 11-12; 9/3 TT 11, 48, 66-67) Speed was also an elementary component of the forces that ejected Mr. Skyllingstad from the train and crushed Mr. Wilmotte, as this Court also recognized. (Dkt. # 143-1 at 62)

Amtrak never objected to statements regarding the speed of the train (*see* Dkt. # 142 at 8-9, citing Dkt. # 143-1 at 45-48), and the authority cited by Amtrak confirms plaintiffs' counsel did nothing wrong by referring to the train's speed. (*See* Dkt. # 142 at 13 (citing *Snyder v. Gen. Elec. Co.*, 47 Wn.2d 60, 287 P.2d 108 (1955) (testimony regarding speed of vehicles involved in an accident was admissible despite defendant's concession of liability)); *see also Murray v. Mossman*, 52 Wn.2d 885, 329 P.2d 1089, 1091 (1958) (no error in admitting photographs and testimony regarding an accident, despite admission of liability, because they "tended to show the force and direction of the impact that resulted in respondent's injury"). Amtrak's stipulation to plaintiffs'

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON 98104
(206) 467-6090

1    animation depicting the derailment further confirms that there was nothing improper

2    about referencing the speed of the train.  (*See* Hoyal Dec., Ex. C-14; 9/4 TT 89; Ex. 5)

3        As this Court recognized during trial, plaintiffs' reference to Amtrak's admitted

4    liability – a statement that tracks this Court's instructions – was also entirely appropriate.

5    (Dkt. # 119 at 20, Instruction 18; *see also* Hoyal Dec., Ex. C-44; 9/12 TT 28 (The Court:

6    "It seems to me the statement could be put in here, and it is not harmful in any way, it is

7    accurate, Amtrak has admitted it is liable for the damages caused by the derailment."))

8    Contrary to Amtrak's assertion, plaintiffs did not falsely inform the jury that it only

9    admitted liability in August of this year – Amtrak stated it would "not contest liability for

10    compensatory damages *proximately caused* by the derailment," while at the same time

11    steadfastly denying that plaintiffs' injuries were caused by the derailment.  (*See* Hoyal

12    Dec., Ex. C-16; 9/5 TT 15 (Amtrak's counsel:  "We conceded liability for compensatory

13    damages in our Answer.  We have not conceded causation."))  As this Court recognized,

   "liability . . . includes causation."  (Hoyal Dec., Ex. C-16; 9/5 TT 15)

### iii.    This Court did not abuse its discretion in approving counsel's reference to forensic experts who did not testify.

14        Amtrak also complains that plaintiffs' counsel "point[ed] out to the jury that

15    *Defendant* had retained forensic experts that never took the witness stand."  (Dkt. # 142

16    at 18 (emphasis added by Amtrak))   What plaintiffs' counsel actually told the jury

17    was"[y]ou know that my clients were seen by other forensic consulting physicians" (Dkt.

18    # 143-1 at 27), never mentioning they were Amtrak's experts.  As this Court recognized at

19    the time, counsel's statement was consistent with this Court's direction and what

20    plaintiffs' counsel promised to say.  (Hoyal Dec., Ex. C-32; 9/11 TT 123 ("I have already

21    indicated that the plaintiff can indicate that he had been examined by other physicians");

22    *see also* Hoyal Dec., Ex. C-33; 9/11 TT 125 ("I would like to be able to say, 'Have you been

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 12
NO.  2:18-cv-00086-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

reviewed by other forensic consultants or doctors,' when I question my plaintiffs.  The

Court:  I will allow that."); Dkt. # 143-1 at 24 ("I am going to say my clients have been

viewed by other forensic consulting physicians.")) Amtrak's umbrage at counsel's

statement that "you did not hear from them" also ignores that the jury was obviously

aware of what witnesses did and did not testify.

### C.   No misconduct tainted the jury's verdict.

Amtrak's allegation that plaintiffs' counsel engaged in misconduct during their

opening statement and closing arguments is both procedurally and substantively flawed.

Amtrak failed to object to much of the alleged misconduct, and now patently

mischaracterizes counsels' statements.

"Reversal on the grounds of attorney misconduct is rare." *Amezcua v. Boon*, 754 F.

App'x 551, 554 (9th Cir. 2018) (citing *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103,

1107 (9th Cir. 1991). A party seeking to overturn a jury's verdict on grounds of misconduct

must make "a concrete showing of prejudice" resulting from the allegedly improper

argument. *Hemmings*, 285 F.3d at 1193. A new trial should only be granted where the

"flavor of misconduct … sufficiently permeate[s] an entire proceeding to provide

conviction that the jury was influenced by passion and prejudice in reaching its verdict."

*Settlegoode*, 371 F.3d at 516-17 (quoted source omitted) (reversing district court's grant of

new trial).

"[S]ome degree of emotionally charged language during closing argument in a civil

case is a well-accepted tactic in American courtrooms," and consequently not a basis for

a new trial. *Settlegoode*, 371 F.3d at 518. Where the offending remarks occurred

principally during closing argument, rather than throughout the course of the trial, the

statements are less likely to have pervaded the trial and thus prejudiced the jury.

*Settlegoode*, 371 F.3d at 518; *Cooper*, 945 F.2d at 1107 (denying new trial where "the

alleged misconduct occurred only in the argument phase of the trial"); *Kehr,* 736 F.2d at

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

1286 ("[T]he offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial.  They were isolated, rather than persistent.").

None of the cases cited by Amtrak support granting a new trial.  *Howard v. Connett*, No. 211CV01402RFBGWF, 2017 WL 4682300, at \*2-6 (D. Nev. Oct. 17, 2017) and *Zweizig v. Nw. Direct Teleservices; Inc.*, 331 F. Supp. 3d 1173, 1178-80 (D. Or. 2018) *rejected* each of the defendant's arguments for a new trial, including that plaintiffs had improperly made "golden rule," "send a message," and arguments for punitive damages. *Christopher v. Fla.*, 449 F.3d 1360, 1367 (11th Cir. 2006) *reh'g denied,* 213 Fed. App'x 972 (2006), affirmed the grant of a new trial because – unlike here – liability was contested, and plaintiff argued for liability based on a theory that had been dismissed on summary judgment.  And while *Lacey Marketplace Assocs. II, LLC v. United Farmers of Alberta Co-op. Ltd.*, No. C13-0383JLR, 2015 WL 4604044, at \*17 (W.D. Wash. July 30, 2015), *rev'd in part sub nom.* 720 Fed. App'x 828 (9th Cir. 2017), cites *Christopher,* Judge Robart *denied* the motion for a new trial in *Lacey* based on defendant's argument that counsel engaged in misconduct by advocating for plaintiffs' preferred definition of the term "benefit," which "did not contradict any definition of 'benefit' previously set forth by the court."  Here also, none of the alleged misconduct Amtrak belatedly complains of could justify a new trial.

### 1. Amtrak gambled on the verdict by failing to lodge timely objections at trial.

Amtrak's highly experienced and skilled counsel (Hoyal Dec., Ex. C-31; 9/11 TT 118), never  objected, requested a curative instruction, or moved for a mistrial on the grounds now claimed to justify a new trial, creating a strong presumption "that counsel made a strategic decision to gamble on the verdict and suspected that the comments would not sway the jury." *Hemmings*, 285 F.3d at 1195; *see also Settlegoode*, 371 F.3d at

517 ("allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error") (quoted source omitted).   As a consequence, the claimed misconduct can justify a new trial only as "plain error" that is obvious, prejudicial, and results in a miscarriage of justice.  *Settlegoode*, 371 F.3d at517.

Amtrak gambled on the verdict and lost.   Amtrak did not object at all during plaintiffs' closing argument.   It may not now seek a new trial by claiming as prejudicial misconduct statements and arguments that it did not deem offensive during trial.

> **2.     Plaintiffs' counsel appropriately informed the jury that it represented the community, and did not make a "Golden Rule" argument.**

Amtrak's misconduct argument is founded on the false assertion that plaintiffs' counsel made an improper "Golden Rule" argument by telling the jury that it was the "conscience of the community."  (Dkt. # 142 at 9-10)  Amtrak is wrong on both counts. Although plaintiffs' counsel, beginning in voir dire, accurately told the panel (without objection) that they were representatives of the community (Hoyal Dec., Ex. C-6; 9/3 (voir dire) TT 63; (Dkt. # 143-1 at 25, 30)), counsel never asked the jurors to award damages by placing themselves in the position of the plaintiffs, and never even used the term "conscience" in reminding the jury of its constitutional role to assess damages as representatives of the community.

Counsel's statements to the jury that "[y]ou represent the community" and "[y]ou are the community" were correct, and entirely proper.  The Supreme Court has long recognized that juries embody "the commonsense judgment of the community."  *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975).  In the Western District's "We the People, the Honor of Jury Service" video, available at https://www.wawd.uscourts.gov/jurors/about-juries, Justice Sandra Day O'Connor informs jurors that their "presence makes it possible for the court to select a jury from a representative sample of our community," and stresses

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 15
NO.  2:18-cv-00086-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

the right "to have issues addressed by a jury drawn by your own community." Amtrak did not contemporaneously object to these statements that it now claims were so outrageous as to justify a new trial, and only mentioned them in passing as part of its baseless argument that plaintiffs encouraged the jury to "punish" Amtrak. (Hoyal Dec., Ex. C-62; 9/12 TT 99; *see* § II.C.4, *supra*)

Regardless, the threshold premise of Amtrak's argument – that referring to jurors as the "conscience of the community" is so prejudicial as to justify a new trial – is itself flawed. "Appeals to the jury to act as a conscience of the community are not impermissible unless they are specifically designed to inflame the jury." *People of Territory of Guam v. Quichocho*, 973 F.2d 723, 727 (9th Cir. 1992). In *Quichocho,* a prosecutor's explicit call to "send a message to the defendant" as "the conscience of our community" on behalf of "all these parents of murdered children, all these groups for victims," although "troubling," was harmless beyond a reasonable doubt because the comments were not extensive and – as here – "the court instructed the jury to focus solely on the evidence presented." 973 F.2d at 727; *see also Miller v. Kenny*, 180 Wn. App. 772, 816, 325 P.3d 278, 300 (2014) (denying new trial when counsel's argument that "the local jury reflects the 'conscience of the community' and serves as a protector and guardian for the community" was not "specifically designed to inflame the jury").

The Fifth Circuit cases cited by Amtrak are not to the contrary. In *Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233 (5th Cir.1985), *reh'g denied*, 760 F.2d 269 (1985) (Dkt. # 142 at 10-11), plaintiffs' counsel repeatedly asked the jury for a verdict that it could be "proud of," and argued that the defendant did not believe that "th[e] kinds of citizens in our community are worth something" "because we are common people." 754 F.2d at 1238 n.2-3. The Fifth Circuit held that this "us-against-them plea" was meant to "pit[] 'the community' against a nonresident corporation." 754 F.2d at 1238. As the Fifth Circuit later explained in distinguishing *Westbrook*, "conscience of the community" arguments are

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 16
NO.  2:18-cv-00086-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

improper only "when the parties' relative popular appeal, identities, or geographical locations are invoked to prejudice the viewpoint of the jurors." *Guar. Serv. Corp. v. Am. Employers' Ins. Co.*, 893 F.2d 725, 729, *as modified on reh'g*, 898 F.2d 453 (5th Cir. 1990).

Here, unlike in *Westbrook,* plaintiffs' counsel never appealed to local prejudice, or asked the jury to rule against Amtrak because of its identity or location, or the parties' relative popularity.  To the contrary, counsel instead asked the jury to focus on plaintiffs and their injuries, telling the jury this case "is actually not even about Amtrak.  What this case is about is Dale Skyllingstad, Maddie Wilmotte, Blaine Wilmotte and the next 40-plus years of their life."  (Hoyal Dec., Ex. C-45; 9/12 TT 43)  Moreover, this Court instructed the jury that "[a]ll parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party" (Dkt. # 119 at 17, Instruction 15), further distinguishing this case from *Westbrook* and refuting any notion that Amtrak was treated unfairly.

Amtrak also misrepresents the record in asserting that counsel made an improper "Golden Rule" argument.  Amtrak offers in support of this claim only counsel's statement that an award of compensatory damages is "the way the legal system holds folks accountable for all of our protection, all of our safety."  (Dkt. # 142 at 9, citing Dkt. # 143-1 at 46-47)  Amtrak never objected to counsel's statement, or asserted that this was somehow a "Golden Rule" argument.[2]

A statement that the legal system compensates plaintiffs for their injuries through an award of monetary damages is unobjectionable, and Amtrak's belated assertion in this motion that this was in fact an impermissible "golden rule" argument is meritless.  The "Golden Rule" applies primarily in criminal trials, to prohibit prosecutors from asking the

---

[2] While Amtrak moved for a mistrial, that motion was based only on its assertion that plaintiffs' counsel had somehow urged the jury to award punitive damages, not that plaintiffs were making an improper "Golden Rule" argument.  (Dkt. # 143-1 at 35)  This argument is addressed *supra* at § II.C.4.

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 17
NO.  2:18-cv-00086-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

jury to think of themselves in the place of the victim, because such a request "inappropriately obscure[s] the fact that [a prosecutor's] role is to vindicate the public's interest in punishing crime, not to exact revenge on behalf of an individual victim.'" *Fields v. Woodford*, 309 F.3d 1095, 1109, *as amended,* 315 F.3d 1062 (9th Cir. 2002) (quoted source omitted). Here, in the civil context, plaintiffs' counsel never asked the jurors to put themselves in the place of any of the plaintiffs. Rather, counsel asked the jurors to award damages to the plaintiffs, based on the evidence presented at trial. (*See, e.g.*, Hoyal Dec., Ex. C-46-58, 65; 9/12 TT 46-58, 105 (repeatedly referencing the testimony of plaintiffs as well as ten of the medical and economic experts who testified at trial).

### 3. Counsel repeatedly informed the jury that plaintiffs bore the burden of proof and clarified his "benefit of the doubt" statement as this Court instructed.

Amtrak also argues that plaintiffs "invited the jury to ignore Plaintiffs' burden of proving its right to damages" because of a single remark – made immediately after acknowledging plaintiffs' burden of "51 percent" – that Amtrak "shouldn't get the benefit of the doubt." (Dkt. # 143-1 at 34) As this Court will recall, based on Amtrak's objection, this Court directed plaintiffs' counsel to clarify to the jury that plaintiffs bore the burden of proof. He did so at the outset of his rebuttal:

> Ladies and gentlemen of the jury, in my closing, while I said '"benefit of the doubt," I did not mean to say in any way that we don't have the responsibility to prove by a preponderance of the evidence, and I should not have used that term. You should follow the instructions given to you by Judge Settle.

(Dkt. # 143-1 at 40)

Immediately after plaintiffs' rebuttal, this Court acknowledged that it was "satisfied with what was said there" and correctly observed that far from "enhanc[ing] his credibility," as Amtrak now alleges (Dkt. # 142 at 12), plaintiffs' counsel had "lost some credibility, he restored some credibility" because "[h]e had to acknowledge that he made

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 18
NO.  2:18-cv-00086-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

a mistake and he was correcting the mistake." (Dkt. # 143-1 at 42)  Amtrak claims counsel did not faithfully follow this Court's admonition, asserting that counsel "had agreed to tell the jury that he was making his corrective comments 'in accordance with the instructions that were given,'" (Dkt. # 142 at 12, quoting Dkt. # 143-1 at 42), but counsel in fact agreed to (and did) say (at least five times) that "you should follow the instructions that are given to you by the Judge." (*Compare* Dkt. # 143-1 at 39, *with* Dkt. # 143-1 at 40)

Amtrak's contention that this single remark, swiftly corrected, so confused the jury as to require a new trial ignores the *repeated* statements by counsel for both sides, as well as this Court's instructions, informing the jury that plaintiffs' bore the burden of proof. In addition to their statement in rebuttal, plaintiffs began their initial closing argument by reading to the jury Instruction 2 setting forth their burden.  (Dkt. # 143-1 at 25) Plaintiffs also acknowledged their burden at the end of their initial closing argument and at the end of their rebuttal (Dkt. # 143-1 at 34, 41), and Amtrak stressed it in its closing argument.  (Hoyal Dec., Ex. C-60; 9/12 TT 67)  Moreover, contrary to Amtrak's assertion that this "Court did not instruct the jury that . . . [its] duty was to determine whether Plaintiffs' claims had been proven by Plaintiffs by a preponderance of the evidence" (Dkt. # 142 at 11), this Court did so both in its written and oral instructions, and again immediately before plaintiffs' rebuttal, stating "the plaintiff has the burden of proof." (Dkt. # 143-1 at 39)  "A closing argument that tracks the jury instructions cannot possibly be misconduct."  *Settlegoode*, 371 F.3d at 519.

### 4.    Plaintiffs never asked the jury to punish Amtrak, but instead consistently asked for "fair and reasonable compensation for their injuries."

Finally, Amtrak repeatedly asserts that plaintiffs somehow asked the jury to "punish" Amtrak.  (*See, e.g.*, Dkt. # 142 at 4, 6, 9)  But plaintiffs never once "use[d] the word 'punishment,'" as this Court itself noted in response to Amtrak's motion for a

mistrial after plaintiffs' initial closing argument.  (Hoyal Dec., Ex. C-62; 9/12 TT 99)

Plaintiffs instead repeatedly asked – consistent with this Court's instruction – for "fair

and reasonable compensation for their injuries and what they experienced."  (Dkt. # 143-

1 at 25; *see also* Dkt. # 143-1 at 25 ("You are the ones to provide judgment as relates to

what is fair and reasonable compensation for their injuries."); Hoyal Dec., Ex. C-57; 9/12

TT 57 ("we just want fair and reasonable compensation"); Dkt. # 143-1 at 31 ("This is what

I think is fair and reasonable compensation"))  (*See* Dkt. # 119 at 20, Instruction 18 ("You

must determine the amount of money that will reasonably and fairly compensate for such

damages."))  Even had plaintiffs argued for punitive damages, Amtrak could not seek a

new trial on that basis because it *rejected* the Court's offer to require plaintiffs' counsel to

include in his rebuttal a statement that he was not "suggesting that Amtrak should be

punished in your arriving at compensatory damages."  (Hoyal Dec., Ex. C-64; 9/12 TT

102)  *See United States v. Rodriguez*, 766 F.3d 970, 987 (9th Cir. 2014) (evidence was not

unfairly prejudicial because "[a]ppellants rejected the district court's offer to provide a

limiting instruction").

### D. The jury's verdict is supported by the substantial evidence of plaintiffs' injuries, suffering, and emotional distress.

In the end, Amtrak's real objection is to the size of the jury's verdict (Dkt. # 142 at

21, 25), based largely on a comparison to other verdicts that is expressly prohibited by

controlling law. But this Court must give "substantial deference to a jury's finding of the

appropriate amount of damages," and "must uphold the jury's findings unless the amount

is grossly excessive or monstrous, clearly not supported by the evidence, or based only on

speculation or guesswork."  *In re Exxon Valdez*, 270 F.3d 1215, 1248 (9th Cir. 2001)

(quoted source omitted).  And although the grant or denial of a new trial is a procedural

matter governed by the federal rules, the substantive question whether the verdict was

excessive is governed by state law, as Amtrak acknowledges.  (*See* Dkt. # 142 at 21)

Amtrak's argument ignores the "inviolate" right to jury trial, particularly in the determination of damages, *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 771 P.2d 711, 716, *as amended,* 780 P.2d 260 (1989) ; *Bunch v. King Cty. Dep't of Youth Servs.*, 155 Wn.2d 165, 116 P.3d 381, 389 (2005) (reversing remittitur), which prohibits a comparison of verdicts.  "The determination of the amount of damages, particularly in actions of this nature [pain and suffering], is primarily and peculiarly within the province of the jury." *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 840 P.2d 860, 872 (1992) (quoting *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 699 P.2d 1230, 1232 (1985); To justify reducing a jury verdict, its excessiveness "must be of such manifest clarity as to make it unmistakable." *Bingaman*, 699 P.2d at 1233.  Further, where, as here, a jury "award[s] substantially fewer damages than counsel requested" that undercuts any assertion that "the jury verdicts were excessive in light of plaintiffs' counsel's remarks during closing argument" or the result of passion or prejudice.  *Broyles v. Thurston Cty.*, 147 Wn. App. 409, 195 P.3d 985, 1003 (2008).

> **1.    Washington law forbids comparison of jury verdicts to determine whether a verdict is excessive.**

Under Washington law, "it is improper to assess the amount of a verdict based upon comparisons with verdicts in other cases." *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 864 P.2d 921, 933 (1993) (quoting *Washburn*, 840 P.2d at 872). "[T]o upset a jury's factual determination [of damages] on the basis of what other juries awarded to other plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of factfinding." *Washburn*, 840 P.2d at 872 (quoted source omitted);[3] *see also Mattschei v. United States*, 600 F.2d 205, 209 (9th Cir. 1979) ("[D]amage awards turn on the facts of each case. While analogies to, and

---

[3] The federal cases cited by Amtrak as its only authority for comparing verdicts (Dkt. # 142 at 21) were decided before the Washington Supreme Court's definitive rejection of verdict comparisons in 1992.

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 21
NO.  2:18-cv-00086-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

comparisons with, other cases may be helpful on many types of issues, their usefulness on questions of damages is extremely limited." (internal quotation omitted)).

Amtrak also wrongly suggests that Washington law supports remittitur based on the ratio of non-economic and economic damages.  (*See* Dkt. # 142 at 24-25)  Nothing supports that proposition, which is just another way of "comparing" verdicts.  To the contrary, there are only three valid bases for remittitur: lack of substantial evidence, proof that passion or prejudice rather than reason guided the verdict, or a verdict that "shocks the conscience." *Bunch*, 116 P.3d at 389 (reversing remittitur and reinstating verdict). Amtrak alleges economic and noneconomic damages must be "proportion[al]" under *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 856 P.2d 746 (1993), but the "*Hill* court did not engage a ratio-based analysis." *Estenson v. Caterpillar Inc.*, 189 Wn. App. 1053, 2015 WL 5224161, at *12 (2015) (unpublished; citable under Washington GR 14.1).

Rather than being "instructive" (Dkt. # 142 at 21), relying upon a comparison of jury verdicts as a basis for remittitur or new trial would be reversible error.  In any event, ample evidence supports the jury's verdict.

### 2.  Plaintiffs' noneconomic damages are supported by substantial evidence.

Without any reference to the agony plaintiffs experienced or the life-altering injuries they suffered, Amtrak contends that the size of the verdicts alone shows that the jury overcompensated plaintiffs.  But Amtrak cannot show that the jury's awards of noneconomic damages to Mr. Wilmotte and Mr. Skyllingstad were excessive or punitive by merely pointing to their size, as "the amount of a verdict in and of itself cannot sustain a conclusion that it is excessive." *Washburn*, 840 P.2d at 878 ("Amount alone cannot equal excessiveness; the fact that $8 million is a large sum of money is beside the point."); *see also Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 191 P.3d 879, 892 (2008) ("this court will not find [a jury verdict] to be the result of 'passion or prejudice' based

solely on the award amount."). Washington law requires only "evidence of anguish and distress," which "can be provided by the plaintiff's own testimony." *Bunch*, 116 P.3d at 390. A large verdict does not carry "its own death warrant solely by reason of its size." *Bingaman*, 699 P.2d at 1234.

The record is full of evidence supporting the jury's noneconomic awards to both Mr. Wilmotte and Mr. Skyllingstad. What Amtrak blithely characterizes as "severe pain for some 90 minutes beginning immediately after the derailment" (Dkt. # 142 at 6 n.2) callously belittles Mr. Wilmotte's pain and terror while, suffering a broken arm, broken hip, and open mid-shaft fracture of his femur, he remained trapped in his truck, terrified it might explode, crushed by the railcar that had careened off the overpass onto I-5. (Hoyal Dec., Ex. C-35; 9/11 TT 156)  Mr. Wilmotte not only continues to experience chronic pain, he also spends most days wondering whether "something is going to happen where I am going to die." (Hoyal Dec., Ex. C-37; 9/11 TT 169)  That he can now "mow the lawn" (Dkt. # 142 at 24) will never make up for the life-altering experience Amtrak caused.

Similarly, Mr. Skyllingstad, who suffered a broken back, fractured pelvis, and traumatic brain injury that has left him with memory loss, and deficiencies in word finding, problem solving, and fluency, testified how the derailment, which ejected Mr. Skyllingstad from the railcar with such force that one witness thought he was dead, forever changed his life, leaving him fearful he will never find a life partner.[4] (Hoyal Dec., Ex. C-38-40; 9/11 TT 193-195)

---

[4] Related to this argument, Amtrak complains that there was no evidence to support counsel's assertion that Mr. Skyllingstad would have "to worry about future surgeries on his back," a component of his noneconomic damages. (Dkt. # 143-1 at 29-30)  Leaving aside that Amtrak never objected to this statement, waiving any argument that it was improper, Dr. Brown testified that Mr. Skyllingstad "has a risk for more problems," including that "one of the disks in his back was torn up, kind of exploded, and pushed on the nerve. . . .  That may require . . . more surgery in the future." (Hoyal Dec., Ex. C-21-22; 9/5 TT 99-100)  Moreover, the jury was instructed, without exception, not only that lawyer arguments are not evidence, but that it could not award any damages for future medical risk "unless you find that any such future medical risk has been proven through medical expert testimony by a preponderance of the evidence," an instruction that plaintiffs' counsel read during closing argument. (Dkt. # 143-1 at 33)

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 23
NO.  2:18-cv-00086-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

Plaintiffs are young. Their lives are forever altered. They will live with their pain, injuries, and emotional distress for decades. The jury's verdict for those nonecononmic damages was not excessive. See *Tortu*, 556 F.3d at 1086 (reversing grant of new trial because "[t]he district court's discussion of excessive damages omitted any mention of the personal humiliation and emotional suffering that [plaintiff] experienced.").

### 3. Substantial evidence supports Mr. Skyllingstad's economic damages award.

Amtrak argues that Dr. DeKay testified to $380,310 in economic damages using averages for Mr. Skyllingstad. The jury was entitled to award economic damages based upon their own evaluation of the evidence regarding life expectancy. Dr. DeKay testified regarding the economic losses based upon "how much that would be per year over the remainder of his life expectancy." Hoyal Dec., Ex. C-_, 9/11 TT 39. The jury was not limited to using the ***average*** projections on life expectancy. As Instruction No. 16 stated, average life expectancy is one factor, and "not controlling;" it should be considered with other evidence in the jury's discretion. The award is supported by the evidence.

Notably, the jury award of $1 million in economic damages to Blaine Wilmotte fell within Dr. DeKay's range for him. The two different verdicts reflect that the jury did not confuse Blaine Wilmotte and Dale Skyllingstad. Rather, the damages properly resulted from a careful and individualized assessment of each plaintiff based upon all the evidence relevant to life expectancy and other individual factors.

### 4. Substantial evidence supports Ms. Wilmotte's loss of consortium damages.

Ms. Wilmotte's testimony regarding the impact of the derailment on her husband provide ample evidence for the jury's $2 million award. She described how, far from the "super laid back and really confident" man that she married, her husband is now "very serious" and "removed," and that neither of the Wilmottes can even be in a car without

experiencing anxiety.  (Hoyal Dec., Ex. C-26, 27-28; 9/10 TT 197, 212-13)  Mr. Wilmotte testified that "I don't have the relationship I should with my wife and my daughter, and my family.  I have a lot of anxiety every day just about my own well-being, my own limitations," and that "I am not physically what I used to be," a topic "I don't talk about . . . with my wife."  (Hoyal Dec., Ex. C-37; 9/11 TT 169)

The Wilmottes are in their twenties, with a young child.  Their relationship will be scarred for many decades to come.  This evidence fit well within Instruction 18, which without exception told the jury that consortium damages include the loss of "the fellowship of the marital community and the right of one spouse to the company, cooperation, and aid of the other in the matrimonial relationship.  It includes emotional support, love, affection, care services, companionship, including sexual companionship, as well as assistance from one spouse to the other."

The jury awarded $1 million *less* than Ms. Wilmotte requested, again confirming that jury carefully deliberated over the evidence before rendering its verdict.  *See Hemmings*, 285 F.3d at 1192; *Broyles*, 195 P.3d at 1003.  It was for the jury, not Amtrak, to value the emotional loss and devastation Ms. Wilmotte has suffered.  *Bunch*, 116 P.3d at 389 ("noneconomic damages especially are within a properly instructed jury's discretion").

## III.   Conclusion.

Amtrak does not and cannot contest that plaintiffs suffered devastating, life-altering injuries as a result of its negligence.  A properly instructed jury awarded damages, in amounts substantially less than requested by plaintiffs, after considering lay and expert evidence over the course of seven days.  This Court should deny Amtrak's motion for remittitur or new trial.

/ / /

/ / /

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 25
NO.  2:18-cv-00086-BHS

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

DATED this 28th day of October, 2019.

LUVERA LAW FIRM

*/s/ David M. Beninger*
David M. Beninger, WSBA 18432
Andrew Hoyal, WSBA 21349
Patricia Anderson, WSBA 17620
701 Fifth Avenue, Suite 6700
Seattle, WA 98104-7016
Telephone: 206-467-6090
Facsimile: 206-467-6961
Email: david@luveralawfirm.com
       andy@luveralawfirm.com
       patricia@luveralawfirm.com

Sean P. Driscoll
Kristofer S. Riddle
(Limited Admission Pursuant to APR 8(b))
Clifford Law Offices, P.C.
120 North LaSalle Street, Suite 3100
Chicago, Illinois 60602
Telephone: 312-899-9090
Facsimile: 312-251-1160
Email: spd@cliffordlaw.com
       ksr@cliffordlaw.com

Attorneys for Plaintiffs
Wilmotte and Skyllingstad

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 26
NO.  2:18-cv-00086-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

## CERTIFICATE OF SERVICE

I hereby certify that on the below date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tim D. Wackerbarth
Andrew G. Yates
Warren E. Babb, Jr.
Jeffrey M. Odom
Katie Bass
Lane Powell, PC
1420 Fifth Avenue, Suite 4200
PO Box 91302
Seattle, WA  98111-9402
Telephone:  206.223.7000
Facsimile:  206.223.7107
wackerbartht@lanepowell.com
yatesa@lanepowell.com
babbw@lanepowell.com
odomj@lanepowell.com
bassk@lanepowell.com

DATED this 28th day of October, 2019, at Seattle, Washington.

*/s/ Patti L. Bennett*
PATTI L. BENNETT
Paralegal
Luvera Law Firm
701 Fifth Avenue, Suite 6700
Seattle, WA  98104-7016
Telephone: 206.467.6090
Facsimile: 206.467.6961
patti@luveralawfirm.com

PLAINTIFFS' RESPONSE TO
MOTION FOR NEW TRIAL OR REMITTITUR - 27
NO.  2:18-cv-00086-BHS

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090