UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BLAINE WILMOTTE and MADISON WILMOTTE,<br><br>Plaintiff,<br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>Defendant. | CASE NO. C18-0086 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE REMITTITUR |
| DALE SKYLLINGSTAD,<br><br>Plaintiff,<br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>Defendant | CASE NO. C18-0648 |

This matter comes before the Court on Defendant National Railroad Passenger Corporation d/b/a Amtrak's ("Amtrak") motion for new trial or in the alternative remittitur. Dkt. 142. The Court has considered the pleadings filed in support of and in

opposition to the motion and the remainder of the file and hereby grants the motion in part and denies it in part for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On January 4, 2018, Plaintiffs Blaine ("Blaine") and Madison ("Madison") Wilmotte (collectively "Wilmottes") filed a complaint for damages against Amtrak in King County Superior Court for the State of Washington. Dkt. 1-2. On January 19, 2018, Amtrak removed the matter to this Court. Dkt. 1.

On May 3, 2018, Dale Skyllingstad ("Skyllingstad") filed a complaint for damages against Amtrak. C18-0684BHS, Dkt. 1.

On December 12, 2018, the Court granted the parties' stipulated motion to consolidate these matters for trial with a similar matter, *Harris v. National Railroad Passenger Corporation*, C18-0134 ("*Harris*"), Dkt. 38.

All three cases stem from the derailment of Amtrak 501 on December 18, 2017. Skyllingstad was a passenger on the train and sustained serious injuries when he was thrown from the train landing on the interstate below the point of derailment. Blaine was a passenger in a vehicle driving on the interstate and sustained serious injuries when a train car fell onto the vehicle. Madison asserted a claim for loss of consortium. Amtrak admitted liability, and the issues at trial were each plaintiff's damages.

On August 20, 2019, the Court held a pretrial conference. Dkt. 96. Trial commenced on September 3, 2019 and lasted for eight days. On September 13, 2019, the jury returned a verdict as follows: Skyllingstad – past and future economic damages of $700,000 and past and future noneconomic damages of $7,000,000; Blaine - past and

ORDER - 2

future economic damages of $1,000,000 and past and future noneconomic damages of $6,000,000; and Madison – past and future loss of consortium damages of $2,000,000. Dkt. 126.

On October 11, 2019, Amtrak filed the instant motion for a new trial or in the alternative remittitur. Dkt. 142. On October 28, 2019, Plaintiffs responded. Dkt. 147. On November 11, 2019, Amtrak replied. Dkt. 150.

## II. DISCUSSION

**A. New Trial**

The "court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for new trial may be granted." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Rather, the court is "bound by those grounds that have been historically recognized." *Id*. "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Id*. (citation omitted).

In this case, Amtrak's motion for a new trial is based on (1) an excessive verdict as a result of consolidating the matters, (2) misconduct by Plaintiffs' counsel, and (3) errors by the Court. Dkt. 142 at 4–20.

### 1. Consolidated Trial

Amtrak argues that it suffered prejudice from the consolidation. Although Amtrak fails to elaborate on this alleged prejudice, it contends that consolidation led to an excessive verdict. On that issue, the Court must apply state law in determining whether damages awarded on a state law claim are excessive. *Cosby v. AutoZone, Inc.*, 445 Fed. Appx. 914, 916 (9th Cir. 2011). In Washington, courts are authorized by statute to order a new trial if "the damages awarded by a jury . . . [ are] so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice." RCW 4.76.030. In addition to "passion or prejudice," Washington courts recognize as grounds for a new trial that the damages either "are outside the range of substantial evidence in the record" or "shock the conscience of the court." *Green v. McAllister*, 103 Wn. App. 452, 462 (2000).

First, Amtrak objects to the "Court's consolidation of Plaintiffs' separate and very distinct damage claims . . . ." Dkt. 142 at 6. Contrary to Amtrak's description of consolidation, the Court granted the parties' stipulated motion to consolidate. *Harris*, Dkt. 38. Now, Amtrak implies that the Court should have *sua sponte* denied that stipulation. Amtrak provides no authority, and the Court is unaware of any, for the proposition that the Court either committed legal error or abused its discretion in granting the parties' stipulated motion to consolidate three cases in which the "parties believe[d] . . . involve[d] similar claims and counsel . . . ." *Id.* at 1. Moreover, Amtrak fails to cite any actual objection to consolidation during trial. It even admits that it only "expressed growing concerns at the pretrial conference and during the course of trial . . . ." Dkt. 142

at 7. Amtrak fails to establish that a "growing concern" constitutes an actual objection. Therefore, the Court concludes that Amtrak waived any objection to consolidation and denies the motion on this issue.

Second, Amtrak argues that it was prejudiced by Plaintiffs' presentation of evidence and the consolidated closing arguments. Dkt. 142 at 4–6. Specifically, Amtrak states as follows:

> [Plaintiffs' counsel] chose to: (i) start their case by introducing, in no particular sequence, the medical evidence supporting the Plaintiffs' damage claims, (ii) put plaintiffs on the witness stand as their very last witnesses before resting, rather than start with a plaintiff's testimony, followed immediately by the medical evidence supporting that plaintiff's damage claims; and (iii) in closing argument, treat Blaine Wilmotte and Dale Skyllingstad as basically entitled to the same noneconomic damages, despite the very distinct experiences each had and the injuries each sustained as a result of the derailment.

*Id.* at 5–6. Amtrak fails to establish that parties must present evidence in a particular manner such that failure to follow that procedure results in prejudicial confusion. The Court routinely accepts evidence "out of order" for the convenience of parties and witnesses on the premise that jurors will comprehend the entire story even if it is presented in a slightly disjointed manner. Regardless, Amtrak fails to establish any prejudice in Plaintiffs' presentation of evidence. Instead, Amtrak works backwards from the premise of an unfairly inflated verdict to conclude that somehow the jury must have been confused. Working forward, the Court found no error in Plaintiffs' presentation then and finds none now. Moreover, Amtrak fails to cite any objection to this method during Plaintiffs' case. Therefore, the Court denies the motion on this issue because the issue was waived for failure to object and the argument fails on the merits.

Regarding closing argument, Amtrak argues that the jurors were confused with a single presentation for Plaintiffs as opposed to one closing for the Wilmottes followed by a second closing for Skyllingstad. Dkt. 142 at 5–6. Amtrak's argument, however, is based purely on its position that the verdict was unfairly inflated. Amtrak proposed damage amounts to the jury, and Amtrak fails to provide any evidence or argument as to why the amounts the jury found were unfair whereas its proposals were fair. Such backward looking arguments fail to establish prejudice on the issue of allowing a single closing argument in a consolidated case. Therefore, the Court denies Amtrak's motion on this issue.

Even if Amtrak's motion did not fail on the merits of establishing prejudice, Amtrak has failed to show that the verdict was unduly excessive or shocked the conscience of the Court. Thus, a new trial is not warranted based purely on the amount of the verdict.

### 2. Counsel's Misconduct

Amtrak argues that Plaintiffs' counsel committed prejudicial misconduct in opening statement and closing argument. Dkt. 142 at 8–12. To warrant a new trial, attorney misconduct must "sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984).

#### a. Opening

Amtrak argues that counsel engaged in misconduct on four instances in opening statement. First, Amtrak argues that counsel referred to the accident causing deaths. The

Court agrees with Amtrak that this conduct was irrelevant to the issues in the case and could have only been intended to inflame the jury. The misconduct, however, does not rise to the level of permeating the entire proceeding. Plaintiffs present a persuasive argument that almost every prospective juror admitted to knowing something about the accident during voir dire and, even if a juror did not know that death occurred, it would not take a significant leap of logic to assume that deaths occurred based purely on the injuries to Blaine and Skyllingstad. Therefore, the Court denies Amtrak's motion based on this misconduct.

Second, Amtrak argues that counsel implied that Amtrak admitted liability only a month before trial. The Court finds that this was also an error because the issue of when Amtrak admitted liability was irrelevant to the issues in the case and could have only been offered to bias the jurors against Amtrak. The improper comment, however, seems harmless or, at the least, insufficient to impassion the jury. Any prejudice was also cured when Amtrak made an objection that was sustained with a clarification by the Court as follows: "What is the purpose in talking about the time for when liability was admitted? The fact is, the jury has been instructed that liability is acknowledged." Dkt. 132 at 6. Therefore, the Court denies Amtrak's motion based on this misconduct.

Third, Amtrak argues that counsel informed the jury that the train approached a 30 mile per hour curve at 81 or 82 miles per hour. Amtrak fails to establish how this evidence is improper. The evidence is relevant to the injuries and the impact Plaintiffs' experienced during the accident. During trial, the Court made a ruling as follows:

> I find that [the evidence] is relevant. I don't find that it is unfairly --
> It is certainly prejudicial. Anything that will tell the jury about the severity
> of the impact that can relate to [Blaine's] emotional damages is relevant
> and not unfairly prejudicial.

Dkt. 133 at 32. The Court affirms that ruling that the speed of the train is relevant to the impact of the train car when it struck Blaine's vehicle. Therefore, the Court denies Amtrak's motion on this issue.

Fourth, Amtrak argues that counsel made an improper "golden rule" reference by stating that "the legal system holds folks accountable for all of our protection, all of our safety." It is debatable whether this is a golden rule reference because it does not focus on inviting the jurors to put themselves in the shoes of Plaintiffs. Instead, it is general statement regarding the role of the courts in our society. Regardless, Amtrak has failed to establish that this alleged error likely inflamed the jury. Therefore, the Court denies Amtrak's motion on this issue.

### b. Closing

Amtrak argues that Plaintiffs' counsel engaged in misconduct on three instances in closing argument. First, Amtrak argues that counsel made improper references to the speed of the train as it entered the curve. The evidence was relevant. Therefore, the Court denies Amtrak's motion on this issue.

Second, Amtrak argues that counsel improperly referred to the jury as the conscience of the community. "Appeals to the jury to act as a conscience of the community are not impermissible unless they are specifically designed to inflame the jury." *People of Territory of Guam v. Quichocho*, 973 F.2d 723, 727 (9th Cir. 1992).

While *Quichocho* was a criminal matter, the Fifth Circuit has explained that "conscience of the community" arguments are improper "when the parties' relative popular appeal, identities, or geographical locations are invoked to prejudice the viewpoint of the jurors." *Guar. Serv. Corp. v. Am. Emp's' Ins. Co.*, 893 F.2d 725, 729 (5th Cir. 1990), *opinion modified on reh'g*, 898 F.2d 453 (5th Cir. 1990). Amtrak has failed to establish that counsel's remarks inflamed the jury into an "us-against-them" attitude. For example, the Wilmottes are residents of Idaho. Amtrak fails to explain how the local southwest Washington community would be prejudiced in favor of out-of-state residents against a national corporation. Moreover, one of Amtrak's main trial strategies was to convince the jury to weigh the local, treating physicians' testimony over Plaintiffs' out-of-state doctors and indicate to the jury that Plaintiffs' lead attorney was from Chicago. Regardless, Amtrak has failed to establish that Plaintiffs' counsel committed any misconduct with these comments or, even if improper, prejudiced the jury. Therefore, the Court denies Amtrak's motion on this issue.

Third, Amtrak argues that counsel made a comment that confused the jury as to the burden of proof. Specifically, counsel stated as follows:

> With the burden that I have, 51 percent, you can have some doubts. I think I have proved my burden to 51 percent.
> Who shouldn't get the benefit of the doubt is Amtrak. On December 18th, 2017, the passengers of 501 and the motorists on I-5 gave Amtrak the benefit of the doubt. How did that turn out? They already got the benefit of the doubt. They don't get it twice.

Dkt. 138 at 62. The Court found this to be an improper comment on the burden of persuasion. Dkt. 138 at 99 ("When you made that statement, you were making reference

to Amtrak should be treated somehow differently because of this accident."); *see also Maldonado v. Mo. Pac. Ry. Co.*, 798 F.2d 764, 770 (5th Cir. 1986), *abrogated on other grounds by Warger v. Shauers*, 574 U.S. 40 (2014) ("Plaintiff's counsel suggested during his closing that the jury should give the benefit of the doubt to the working man instead of the corporation. This, of course, was clearly improper."). Having made that finding, the question becomes whether the jury was prejudiced in reaching its verdict. *Kehr*, 736 F.2d at 1286 ("We have no trouble concluding that [the attorney's] remarks were improper. The only question before us, therefore, is whether the instances of misconduct so permeated the trial that the jury was necessarily prejudiced.").

Regarding prejudice, the Court concludes that counsel's comment neither confused the jury nor resulted in Plaintiffs clearly receiving the benefit of any doubt. First, Counsel's comment was isolated, and the jury was informed on numerous occasions that Plaintiffs must prove their damages by a preponderance of the evidence. In fact, that is one of the last things Plaintiffs' counsel told the jury before they were dismissed to deliberate. Dkt. 138 at 106 ("We have had the burden more probably true than not true. I said it from the beginning. And that is the standard."). Although the Court's initial reaction was to give such an instruction itself, the Court allowed Plaintiffs' counsel to clarify his comments during rebuttal. Amtrak objected on the basis that this would only bolster counsel's credibility, which the Court rejected. Amtrak renews its objection contending that Plaintiffs' counsel did not "suffer any adverse consequences for his improper remarks . . . ." Dkt. 142 at 12. Amtrak, however, fails to cite authority for the proposition that an attorney must suffer consequences before the jury for improper

comments. Instead, the Court developed a plan to cure any alleged error stemming from the remarks. The Court concludes that Plaintiffs' counsel sufficiently corrected any confusion by directing the jury to focus on the preponderance of the evidence instead of the benefit of any doubt. Thus, any prejudice was either cured or insubstantial, and the Court denies Amtrak's motion based on attorney misconduct.

### 3. Court Errors

Amtrak argues that the Court committed five errors that deprived Amtrak of a fair trial. Dkt. 142 at 12–20.

#### a. Toby Hayes

Plaintiffs called Toby Hayes, a mechanical engineer, to provide opinions as to the forces necessary to cause some of Blaine's injuries. Amtrak moved to exclude Mr. Hayes, and the Court denied the motion. Amtrak renews that motion on two grounds. First, Amtrak argues that because "Mr. Hayes was not a medical expert, he was not qualified to offer an opinion regarding the extent of Mr. Wilmotte's specific injuries, much less any resulting emotional damages." Dkt. 142 at 13. Amtrak fails to cite to any specific objectionable testimony. Therefore, the Court denies Amtrak's unsupported motion on this issue.

Second, Amtrak argues that because it admitted to causation and liability, this evidence should have excluded as irrelevant. *Id.* Evidence may be relevant to numerous issues. While this evidence could have been used to establish causation, the Court agrees with Plaintiffs that the "amount of force Mr. Wilmotte experienced was plainly relevant to the nature and extent of his injuries and the pain and emotional distress he suffered."

Dkt. 147 at 7. Therefore, the Court finds no error in this evidentiary ruling and denies Amtrak's motion on this issue.

### b. Damages Chart

In closing argument, Plaintiffs' counsel used a chart for proposed damages that had three columns and four rows. The columns were titled "Day of derailment," "Derailment to present," and "Next 40+ years." Dkt. 142 at 14. The rows were titled "Loss of enjoyment of life," Physical pain and suffering," "Emotional pain and suffering," and "Nature and extent of injuries." *Id.* at 14–15. First, Amtrak argues that the chart improperly convinced the jury to award duplicative damages. *Id.* at 15. The Court disagrees and concludes that Plaintiffs' breakdown of damages was well within the realm of proper argument. Amtrak was given the opportunity to argue that Plaintiffs' requests were excessive and inflated, which it did. Therefore, the Court concludes that allowing Plaintiffs to argue for four categories of damages over three time periods was not an error.

Second, Amtrak argues that it was error to allow Plaintiffs to seek damages for the separate category of the nature and extent of their injuries. *Id.* at 16–17. In *Lawrence v. TruGreen Landcare, LLC*, 172 Wn. App. 1036 (2013), the court approved the use of an instruction that the jury must compensate the plaintiff for the "following elements of damage," one of which was "[t]he *nature, extent and duration* of the injury." *Id.* at *3. The court concluded that the language comported with Washington law and distinguished the facts from those addressed in *Powers v. Ill. Cent. Gulf R. Co.*, 91 Ill. 2d 375 (1982) where the jury was given a verdict form with a line item for this element of damages. *Id.*

at *4. If this is a proper element of damages in Washington, then the Court concludes that Plaintiffs may associate a number with that element. Moreover, Amtrak was given the opportunity to argue to the jury that the nature, extent, and duration of the injuries was only a consideration in arriving at reasonable damages. Therefore, the Court concludes that allowing Plaintiffs to use the chart was not an error.

### c. Defendants' Forensic Experts

Amtrak argues that the Court committed error by failing to correct counsel's reference to Amtrak's forensic experts. Dkt. 142 at 18. In closing, Plaintiffs' counsel stated as follows: "You know that my clients were seen by other forensic consulting physicians. You did not hear from them. You heard from people that we brought in." Dkt. 138 at 46. The Court agrees with Amtrak that this reference to irrelevant evidence may have been improper. The Court, however, concludes that this isolated comment was not prejudicial because, standing alone, it did not imply that Amtrak retained and declined to call these experts as witnesses. Therefore, the Court denies Amtrak's motion on this issue.

### d. Back Surgery

Amtrak argues that the Court committed error by failing to correct counsel's comment that Skyllingstad would need a future back surgery. Dkt. 142 at 18. The Court concludes that this was not a prejudicial error because Amtrak had the opportunity to correct the record either at the time the comment was made or in its closing. In any event, the Court concluded that the unintentional misstatement was not grounds for a

at *4. If this is a proper element of damages in Washington, then the Court concludes that Plaintiffs may associate a number with that element. Moreover, Amtrak was given the opportunity to argue to the jury that the nature, extent, and duration of the injuries was only a consideration in arriving at reasonable damages. Therefore, the Court concludes that allowing Plaintiffs to use the chart was not an error.

### c. Defendants' Forensic Experts

Amtrak argues that the Court committed error by failing to correct counsel's reference to Amtrak's forensic experts. Dkt. 142 at 18. In closing, Plaintiffs' counsel stated as follows: "You know that my clients were seen by other forensic consulting physicians. You did not hear from them. You heard from people that we brought in." Dkt. 138 at 46. The Court agrees with Amtrak that this reference to irrelevant evidence may have been improper. The Court, however, concludes that this isolated comment was not prejudicial because, standing alone, it did not imply that Amtrak retained and declined to call these experts as witnesses. Therefore, the Court denies Amtrak's motion on this issue.

### d. Back Surgery

Amtrak argues that the Court committed error by failing to correct counsel's comment that Skyllingstad would need a future back surgery. Dkt. 142 at 18. The Court concludes that this was not a prejudicial error because Amtrak had the opportunity to correct the record either at the time the comment was made or in its closing. In any event, the Court concluded that the unintentional misstatement was not grounds for a

mistrial and is certainly not grounds for a new trial. Therefore, the Court denies Amtrak's motion on this issue.

### e. Amtrak's Proposed Verdict Form

Amtrak argues that it was entitled to a verdict form that separately asked the jury to award past nonecomonic damages and future noneconomic damages. Dkt. 142 at 18–20. Amtrak fails to establish any prejudice from the Court's verdict form that only asked for all noneconomic damages. Therefore, the Court denies Amtrak's motion on this issue.

### 4. Cumulative Errors

In passing, Amtrak argues that the identified errors "collectively deprived Amtrak of a fair trial." Dkt. 142 at 3 (citing *Gonzales v. Police Dept., City of San Jose, Cal.*, 901 F.2d 758, 762 (9th Cir. 1990) ("Considered together, there is no doubt that a remand is required in light of the cumulative effect of the two material errors.")). Amtrak has failed to establish any material errors that deprived it of a fair trial. At most, Plaintiffs' counsel made some improper comments during opening statement and one improper comment during closing regarding the burden of proof. The Court concludes that these cumulative errors do not warrant a new trial. Therefore, the Court denies Amtrak's motion for a new trial.

## B. Remittitur

The Court must uphold "the jury's finding of the appropriate amount of damages . . . unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte Dunes at Monterey,*

*Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996), *aff'd*, 526 U.S. 687 (1999) (citing *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir. 1986), *cert. denied*, 484 U.S. 826 (1987)).

**1.     Skyllingstad's Economic Damages**

At trial, Plaintiffs' expert opined that Skyllingstad's economic damages ranged from $223,686 to $380,310. Dkt. 137 at 42. The jury, however, awarded Skyllingstad $750,000 in economic damages. Dkt. 126 at 2. Amtrak argues that the award is not supported by the evidence and that the Court should remit the award to $225,000. Dkt. 142 at 21–23. Plaintiffs argue that the expert's calculations were based on average life expectancy and that the jury was not bound to that life expectancy. Dkt. 147 at 24. Plaintiffs' argument is without merit because Plaintiffs' expert testified that the economic damages did "extend for his entire life" and only relate to "specific points in time" when Skyllinstad would need to be absent from work or retrain. Dkt. 137 at 46. Thus, the Court concludes that it must remit the award because it is clearly not supported by the evidence.

Regarding what amount is supported by the evidence, Amtrak argues that the Court should remit the award to the low end of Plaintiffs' expert's range because there is a lack of evidence to support the worst-case-scenario amount of $380,310. Dkt. 142 at 22. The Court disagrees. Taken in the light most favorable to Skyllingstad, he submitted evidence that he may need future hip surgery, which would prevent him from working in his current occupation and require retraining. Therefore, the Court grants Amtrak's

motion as to the request to remit but denies it as to the requested amount. Instead, the Court remits the award to Skyllingstad of noneconomic damages to $380,310.

**2. Madison Wilmotte**

Under the law of Washington, awards are considered excessive only if the amount shocks the court's sense of justice or sound judgment. *See Harvey v. Wright*, 68 Wn.2d 205, 210 (1966). Reviewing a non-pecuniary award presents a "delicate and difficult question." *Felder v. United States*, 543 F.2d 657, 674 (9th Cir. 1976). "Each case stands on its own facts." *Shaw v. United States*, 741 F.2d 1202, 1209 (9th Cir. 1984). "The verdict of a jury does not carry its own death warrant solely by reason of its size." *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 838 (1985).

In this case, Amtrak argues that the Court should remit the award to an amount consistent with other verdicts in Washington. Dkt. 142 at 23. Amtrak's position, however, is inconsistent with Washington law because such a comparison-based theory "is inimical to the foundation of particularized justice." *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 266 (1992). Thus, the Court rejects Amtrak's attempt to "consign damages for personal injuries to the cold world of accounting balance sheets." *Id.*

Upon review of the award and the evidence, the Court is unable to reach the conclusion that the amount shocks the Court's conscience. The jury heard the testimony of Madison, a young wife who is committed to a relationship with a physically and mentally different Blaine. Dkt. 136 at 192–214. The jury's award, while large, is neither excessive nor conscience shocking based on her testimony, Blaine's testimony, and the

medical evidence. Therefore, the Court denies Amtrak's motion to remit Madison's damages.

### 3. Blaine and Skyllingstad's Non-Economic Damages

Amtrak argues that Blaine and Skyllingstad's noneconomic damages awards are "clearly excessive." Dkt. 142 at 24–25. Amtrak, however, fails to articulate any legitimate reason for this argument and simply offers awards that it considers to be reasonable. The Court rejects Amtrak's speculation as to these awards and denies the motion on this issue.

## III. ORDER

Therefore, it is hereby **ORDERED** that Amtrak's motion for new trial or in the alternative remittitur, Dkt. 142, is **GRANTED in part** and **DENIED in part** as stated herein.

Dated this 9th day of January, 2020.

BENJAMIN H. SETTLE
United States District Judge